INHABITANTS OF NORTHFIELD *vs.* INHABITANTS OF TAUNTON.

Under the Rev. Sts. *c.* 46, § 19, a notification, signed by " J. D. chairman of the board of overseers of the poor " of a town, and sent to the overseers of the poor of another town, requesting them to remove a pauper, is sufficient, if otherwise in due form.

Although a notification, given by overseers of the poor, stating that A. and his wife and four children have become chargeable, &c. is defective, if A. have more than four children in his family, yet if such notification be answered, without objection to its generality, that objection is thereby waived.

An erroneous statement, made by the overseers of the poor of the town of A. in a notification sent by them to the town of B., respecting the means by which a pauper therein mentioned acquired a settlement in B., does not estop the town of A., in a suit against the town of B. to recover for the support of such pauper, to show that he acquired a settlement in B. by different means from those which were stated in the notification, unless that statement was made with a design to mislead.

ASSUMPSIT to recover expenses incurred in the support of paupers whose settlement was alleged to be in Taunton. The

part'es agreed that such judgment should be rendered, as law and justice require, on the following statement agreed upon by them :

The plaintiffs, at the trial of this case, offered in evidence a notice, dated March 5th 1838, signed by " John M. Dickinson, chairman of the board of overseers of the poor of Northfield," and sent to the overseers of the poor of Taunton, in these terms : " Charles Reed, and his wife and four children, whose lawful settlement is in Taunton, and now are in this town sick and in need of assistance. We have furnished them relief, to the amount of $80, which you are requested to pay, and cause the removal of said paupers, as they are now the proper charge of your town. Charles Reed is son of Isaac Reed. He never gained a settlement of his own, in any town in this Commonwealth. Of course he must follow the settlement of his father."

To this notice the overseers of the poor of Taunton replied, on the 16th of March 1838, stating that upon due inquiry they were satisfied that their town was not the place of the lawful settlement of said Charles Reed, and his wife and four children, and that they therefore should not cause their removal, nor contribute any thing towards their support, nor pay any expense which had already accrued for their support. In a postcript to this reply, it was stated that Isaac Reed's father lived either in Bridgwater or Middleborough, and died when his son Isaac was a small child, and that though Isaac probably lived in Taunton, at different times, yet that he never gained a settlement in that town.

It was in evidence that said Charles Reed had eight children living in Northfield, at the time when said notice was given to the defendants, six of whom were minors, and four of them on expense as paupers. It was agreed that the mother of said Charles Reed had a settlement in Taunton, and that he had acquired no settlement of his own within the Commonwealth.

The defendants offered the deposition of Isaac Reed, father of said Charles, tending to prove that said Isaac, and said Charles, through him, had a settlement in Middleborough. The

plaintiffs also offered the deposition of said Isaac, in which he deposed that he married Hannah Smith, and after an absence at sea, returned and found that she had eloped ; that he then married Bethia Smith, and was indicted therefor and was convicted of bigamy ; and that said Charles was the son of said Isaac and Bethia.

It was admitted that the plaintiffs could show, if allowed, that until the time of the commencement of the present action, said Charles Reed was reputed to be the legitimate son of said Isaac ; but the defendants objected to the admission of such evidence, and also to the evidence of the illegitimacy of said Charles.

If the plaintiffs are entitled to recover for the support of said Charles Reed, and his wife and four children, judgment is to be entered for $ 230·50 ; if for the support of said Charles and his wife only, then judgment is to be entered for $ 126·50 :   Otherwise, judgment to be entered for the defendants.

This case was argued at the last September term.

*Wells & Davis*, for the plaintiffs.

*I. C. Bates & Huntington*, for the defendants.

DEWEY, J.   Various objections are taken to the sufficiency of the evidence offered to maintain this action.   1. It is contended that the notice was informally signed on the part of the overseers of the poor of Northfield ; it not being subscribed with the names of a major part of them, nor directly purporting to be signed by their order, as was the case in *Westminster* v *Bernardston*, 8 Mass. 104.   But we think this objection unavailing ; as we hold, that a signature by " A. B. chairman of the board of overseers," does, on its face, purport to be an act emanating from the board, and to be done under their authority. As such act, it was received and acted upon by the defendants in returning their answer thereto.

2. It is insisted that a notice that Charles Reed and his wife and four children were in need of assistance, and had received support, &c., is a defective notice as to the children ; it being admitted by the plaintiffs that the said Charles Reed had, at the date of the notice, eight children, six of whom were under the

age of twenty-one years, and living in Northfield. The case of *Walpole* v. *Hopkinton*, 4 Pick. 358, is a direct authority to this point, and would be conclusive, if the case rested solely upon the notice given by the plaintiffs. But a notice defective in itself, and which, if unanswered, would be wholly insufficient, may become effectual by an acceptance of it by the other party, and a waiver of the want of sufficient particularity, by returning an answer, placing their objections to the removal of the paupers, and to the payment of the expenses incurred in their support, upon the broad ground of the want of a legal settlement of the paupers in the town sought to be charged. Such was held to be the rule of law in the case of *Embden* v. *Augusta*, 12 Mass. 307, where a notice that the family of J. S. had become poor and were in need of relief &c., was held sufficient ; the over-seers of the poor of the town of Augusta having replied, denying the settlement of the paupers to be in that town. And also in the case of *Shutesbury* v. *Oxford*, 16 Mass. 102, where a notice, defective for its generality, and which would have been insufficient, if unanswered, was held good, being replied to generally, and without any exception to it for want of greater particularity. See also *Orange* v. *Sudbury*, 10 Pick. 22. *York* v. *Penobscot*, 2 Greenl. 1.

3. The remaining objection was apparently more relied upon, and is certainly one of more difficulty. The defendants insist that they are not chargeable upon this notice, as by its terms it has restricted the plaintiffs to establish the legal settlement of the paupers in one particular mode, which mode was not sustained by the proof offered in the case. The notice from the plaintiffs to the defendants, requesting the removal of Charles Reed and his wife and family, and the payment of the expenses already incurred in their behalf, after stating the legal settlement of Reed and his family to be in Taunton, proceeds to state the manner in which said Reed acquired his settlement in Taunton ; reciting that he is the son of Isaac Reed, and never having gained any settlement in his own right, he would follow the settlement of his father. The defendants now offer to prove that the settlement of said Isaac Reed was in Middleborough and not in Taunton ;

and they insist that inasmuch as by the notice given them by the plaintiffs, they claim to charge the defendants by a settlement of the paupers through Isaac Reed, if it appears that he had no legal settlement in Taunton, then Charles Reed could not derive any settlement in Taunton through him. It is conceded by the plaintiffs, that upon a further investigation of the facts, since the date of their notice, it has been ascertained that Charles Reed was an illegitimate child, and that he must therefore follow the settlement of his mother. And they now produce evidence to show that the mother of Charles Reed had her settlement in Taunton, and seek thus to charge the defendants with the support of the paupers. To this evidence the defendants object, and contend that the plaintiffs are estopped to set up a derivative settlement through the mother, under the notice they have given that the pauper, Charles Reed, had his settlement in Taunton, through Isaac Reed, his putative father ; and they insist that they were bound to inquire only as to the settlement of Isaac Reed, and if they found that he had no such settlement in Taunton, that fact would, under the present notice, constitute a good and sufficient defence, and that the plaintiffs should not be allowed to show a settlement derived from any other source.

However plausible this view at first may seem to be, we are satisfied, upon consideration of the point, that the defendants cannot sustain a defence to this action, upon that ground. The statute does not require that a notice from the overseers of the poor should contain any specification of the evidence upon which the party, giving such notice, will rely to prove the legal settlement of the paupers to be in the town to which the notice is given. The Rev. Sts. *c*. 46, § 19, authorize the overseers of the poor to " send a written notification, stating the facts relating to any person actually become chargeable to their town, to one or more of the overseers of the place, where his settle ment is supposed to be," &c. The construction of the statute seems to have been judicially settled in the case of *Quincy* v. *Braintree*, 5 Mass. 86, where the question arose upon *St.* 1793, *c*. 59, § 12, which contained a provision similar to that of the revised statutes just referred to ; and it was held that it was

37 *

unnecessary to state the facts which would show a legal settle-ment in the town to which the notice was sent, or the manner in which such settlement was derived ; it being a sufficient com-pliance with the requisitions of the statute to state that the persons supported had needed assistance and relief, that the same had been furnished by the town giving the notice, and that the legal settlement of such persons was in the town receiving the notice, and requesting the removal of the paupers, and the payment of the expenditures made on their account. No infor-mation or statement beyond this is required by statute, and if further statements are made which prove to be erroneous, they will not operate to the prejudice of the party making them, unless designed or intended to mislead. If so, of course the notice would be fraudulent and deceptive, and would not avail the party giving it. But there is no suggestion of any such fraudulent purpose in the present case. The general notice required by the statute was duly given, and the residue of the notice was an unofficial representation from the overseers of the poor of Northfield, of certain facts connected with the subject of their communication, and if made according to their belief of the facts, and not for the purpose of misleading the other party, although erroneous, this will not vitiate the notice.

Judgment is therefore to be rendered for the plaintiffs for $230.50, the whole amount claimed as damages.